PAUL B. SNYDER
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

✓ FILED
___ LODGED
___ RECEIVED

**June 22, 2006**

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____DEPUTY

**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA**

| | |
|---|---|
| In re:<br><br>JENNIFER SHARON CHUI,<br><br>                   Debtor.<br><br>ALLAN F. KNAPPENBERGER,<br><br>                   Plaintiff,<br>   v.<br><br>JENNIFER SHARON CHUI,<br><br>                   Defendant. | Case No. 05-44093<br><br>Adversary No. 05-04151<br><br>**MEMORANDUM DECISION**<br><br>**NOT FOR PUBLICATION** |

Trial was held on this matter on June 7, 2006. Allan F. Knappenberger (Plaintiff), in accordance with his complaint, seeks to have the debt owed him by Jennifer Sharon Chui (Debtor) found to be nondischargeable under 11 U.S.C. §§ 523(a)(2), (4) and (6). Based on the evidence, testimony and arguments presented, the Court's findings of fact and conclusions of law are as follows:

**FINDINGS OF FACT**

The Debtor retained the Plaintiff, an attorney licensed to practice law in the State of Oregon, to represent her in an ongoing dissolution proceeding. In May, 2004, the Plaintiff

MEMORANDUM DECISION - 1

demanded that the Debtor compensate him for services to date in order to continue his legal representation. On May 18, 2004, the Debtor authorized the Plaintiff to charge the sum of $16,000 against her credit card account. On May 31, 2004, the Debtor again authorized the Plaintiff to charge an additional $17,000 against her credit card account.

On June 2, 2004, the Debtor was advised through an independent source that the Plaintiff had been suspended from the practice of law. On June 5, 2004, similar to other requests made of his clients with impending trial dates, the Plaintiff requested the Debtor's assistance in securing a postponement of the suspension to allow his continued representation in her case. The Debtor's dissolution was scheduled for trial in late July or early August, 2004. In this telephone conversation, the Debtor was first advised by the Plaintiff that he had been suspended for 90 days, commencing July 19, 2004. The Debtor chose not to assist the Plaintiff in securing a postponement of his license suspension. In this conversation, the Debtor did not advise the Plaintiff that on June 3, 2004, she had requested that her credit card company reverse the $33,000 in charges made to pay her past due bill for legal fees.

By a letter dated June 4, 2004 the Debtor was advised by the credit card company that in order to reverse the charges she must submit the dispute in writing. The Debtor subsequently supplemented her request with a written response and attached pleadings from her state court proceeding. Prior to reversing the charges the Debtor did not discuss her dissatisfaction concerning his legal services with him. On or about June 24, 2004, the Plaintiff was advised in a telephone conversation with the Debtor's newly hired attorney that the Plaintiff's representation of the Debtor was terminated. On July 23, 2004, without notice or an opportunity to be heard, the credit card company reversed the $33,000 in charges. At no time

MEMORANDUM DECISION - 2

did the Debtor contest either the quality of work provided by the Plaintiff or his billings. However, the record is clear that she was concerned over the amount of attorney fees being charged in the case.

## CONCLUSIONS OF LAW

### A. 11 U.S.C. § 523(a)(2)(A)

The Plaintiff alleges in his complaint that the debt is nondischargeable under 11 U.S.C. § 523(a)(2). 11 U.S.C. § 523(a)(2)(B) or (C) are not applicable because these sections predicate a cause of action based on a false written statement that concerns the Debtor's financial condition, or the purchase of luxury goods or services.

For a debt to be nondischargeable under 11 U.S.C. § 523(a)(2)(A), a creditor must prove actual fraud. In the Ninth Circuit, a creditor cannot prove actual fraud without establishing by a preponderance of the evidence:

> (1) [that] the debtor made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations; [and] (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

Citibank (South Dakota), N.A. v. Eashai (In re Eashai), 87 F.3d 1082, 1086 (9th Cir. 1996).

The Debtor contends, and the evidence supports the fact that she made no material misrepresentations to the credit card company to secure reversal of the Plaintiff's charges. Prior to requesting the reversal in writing, the Debtor contacted the Oregon State Bar Association (Oregon Bar) and learned that the Plaintiff was facing suspension when he agreed to take her case, had a long history of complaints from clients for being verbally abusive and overcharging, and had received disciplinary admonishments and reprimands from the Oregon Bar. Whether her concerns could have been established is not determinative. The issue is whether she made material misrepresentations to the Plaintiff. The testimony of the Debtor is uncontradicted that she first became aware that the Plaintiff was being suspended from the practice of law through a support group in early June, 2004.

MEMORANDUM DECISION - 3

The Debtor had no knowledge of his suspension until after the $33,000 was authorized. The Court concludes that the Plaintiff has not established by a preponderance of the evidence that the Debtor made any material misrepresentations, either to him or the credit card company.

Additionally, the $33,000 was applied to charges for past services performed by the Plaintiff. There is no evidence that the Debtor did not have an intent to pay for these services when she hired the Plaintiff to represent her, or when she authorized the payment. See, e.g., Wymard v. Ali (In re Ali), 321 B.R. 685, 691-92 (Bankr. W.D. Pa. 2005) (attorney failed to prove that debts were nondischargeable under 11 U.S.C. § 523(a)(2) or (6) where client sought reversal of credit card charges). It was not until after being informed of the suspension that the Debtor contacted the credit card company. Therefore, there is no evidence of fraud for the past charges incurred.

In regards to future charges, the Plaintiff alleges that these debts are nondischargeable because he would not have continued representation if the account had not been brought current. However, as stated above, there is no evidence that the Debtor did not intend to pay for these services until *after* learning of the Plaintiff's suspension. The more difficult issue is whether the Plaintiff can demonstrate nondischargeability under 11 U.S.C. § 523(a)(2)(A) for those services provided after reversal of the charges was sought. The basis for the argument would be that the Debtor allowed the Plaintiff to continue working on her case and incur additional charges when she had no intent to pay for such services. The Plaintiff's time records indicate that he billed $2,658 in charges between June 3, 2004 (the day the Debtor first contacted the credit card company about reversing the charges) and June 24, 2004 (the day the Plaintiff was notified that his employment was terminated).

The Court determines that the Plaintiff has failed to prove that the Debtor misrepresented her intent to pay for these future services and that, even if this element had been established, that the Plaintiff has failed to prove that he justifiably relied on these representations. As stated prior, until learning of the suspension, there is no evidence that the Debtor did not intend to pay for any of the Plaintiff's services. After becoming aware of the

MEMORANDUM DECISION - 4

suspension, although the Debtor did not advise the Plaintiff of her decision to seek reversal of the charges for past services, it was clear that his future involvement in the case was uncertain. The Plaintiff testified that he informed the Debtor that she would not be billed for any future services after the account was brought current until after conclusion of the dissolution trial. As the trial was set during the Plaintiff's suspension and the Debtor had not agreed to seek a postponement of the suspension, the Plaintiff had no assurance that his representation of the Debtor could legally continue. In addition, the Debtor made it clear in several conversations with the Plaintiff and by a fax dated June 8, 2004, that his continued representation was in doubt. In fact, in a responsive fax also dated June 8, 2004, the Plaintiff agreed to suspend any further services in this case until informed otherwise. Finally, as an attorney has a duty to continue working on a case until his withdrawal has been satisfactorily completed, it is likely that these charges would have been necessarily incurred even if she had immediately informed him of her decision to seek reversal of the prior charges. Any reliance by the Plaintiff on the alleged misrepresentations by the Debtor was therefore unjustified.

## B. 11 U.S.C. § 523(a)(4)

Larceny in this context is the fraudulent and wrongful taking of money that belongs to another with the intent of permanently depriving that party of ownership. Vans Inc. v. Rosendahl (In re Rosendahl), 307 B.R. 199, 216 (Bankr. D. Or. 2004).

Payment of bills via a credit card is a conditional payment. In this case, the Debtor had 60 days after the date of the statement on which the charge appeared to contest the charge. Recipients of such payments should also be aware that their receipt of payment is conditional until the 60 day period has lapsed.

In the instant case, the actual payment from the credit card company did not unconditionally become the property of the Plaintiff until the period within which the Debtor could dispute the charges had lapsed. The Plaintiff has failed to establish by a preponderance of the evidence that the credit card charge reversal was either fraudulent or

wrongful. Accordingly, the Plaintiff has not met his burden of proof that the Debtor wrongfully or fraudulently deprived him of property unconditionally belonging to him. The Court concludes that the Debtor did not commit larceny within 11 U.S.C. § 523(a)(4) when she reversed the credit card charges.

### C. 11 U.S.C. § 523(a)(6)

11 U.S.C. § 523(a)(6) excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or the property of another." What constitutes a "willful and malicious injury" has been clarified by the U.S. Supreme Court to mean a "deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." Kawaauhau v. Geiger (In re Geiger), 523 U.S. 57, 61, 118 S. Ct. 974, 977 (1988). A "malicious" injury involves "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1209 (9th Cir. 2001) (quoting In re Bammer, 131 F.3d 788, 791 (9th Cir. 1997) (quotations omitted)).

The willful injury requirement of 11 U.S.C. § 523(a)(6) is satisfied "when it is shown either that the debtor had a subjective motive to inflict the injury or that the debtor believed that injury was substantially certain to occur as a result of his conduct." Jercich, 238 F.3d at 1208. It is irrelevant that there may have been objective substantial certainty that the debtor's conduct would result in injury. Carrillo v. Su (In re Su), 259 B.R. 909, 913 (9th Cir. BAP 2001).

In the instant case, the Debtor testified that when she learned that the Plaintiff was to be suspended from the practice of law, her dissolution was in a critical stage. During this same period, the Debtor also received a request by her former husband's attorneys to pay their fees. She subsequently contacted her credit card company about reversing the charges made to her card in May, 2004, and was advised that the dispute must be in writing. The

MEMORANDUM DECISION - 6

Debtor then contacted the Oregon State Bar Association and learned that the Plaintiff was facing suspension when he took her case, had a long history of complaints from clients for being verbally abusive and overcharging, and had received disciplinary admonishments and reprimands from the Oregon Bar. The Debtor compared these complaints to her situation and attempted to discuss these issues with the Plaintiff over the telephone. The Debtor alleges that the Plaintiff became abusive in these conversations. These telephone incidents led to the hiring by the Debtor of a new attorney.

The Debtor's testimony is found to be credible in that the Court does not conclude that she had a subjective motive to inflict injury or that she believed that injury was substantially certain to occur as a result of her conduct. A preponderance of the evidence indicates that she believed that she was being taken advantage of by the Plaintiff, that he had not performed to the standards required, and that he had overcharged her and placed her in a compromising position because of his impending suspension. Even though her fears may have been unfounded, it is undisputed that the Plaintiff failed to inform her of the suspension proceedings or actual suspension prior to accepting payment. It is also undisputed that he was unable to continue representation of the Debtor during the suspension period and upcoming trial. The Plaintiff has failed to establish the elements of 11 U.S.C. § 523(a)(6).

DATED: June 22, 2006

_/s/ Paul B. Snyder_____
Paul B. Snyder
U.S. Bankruptcy Judge

MEMORANDUM DECISION - 7